UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN EQUIPMENT COMPANY, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:13-CV-2011 |
| TURNER BROS. CRANE AND RIGGING, LLC., | § § § § | |
| Defendant. | § § | |

## OPINION AND ORDER

This insurance dispute arises out of personal injuries suffered by an oil-refinery worker during a workplace explosion. The worker sued the owner of the refinery, and the case settled. In this federal suit, Plaintiff American Equipment Company, Inc.'s ("AEC"), a contractor of the oil refinery, which was required to contribute to the settlement of the worker's claims, seeks reimbursement from its subcontractor, Defendant Turner Bros. Crane and Rigging, n/k/a TNT Crane & Rigging, Inc.'s ("TNT"), for the amount of its contribution to the settlement. Compl., Doc. 1. AEC argues that TNT breached its contractual obligations to defend and indemnify AEC and to procure insurance coverage naming AEC and the project owner as additional insureds. TNT has asserted a counterclaim for a declaratory judgment that AEC has no right to defense or indemnity from TNT under the terms of the parties' agreement. Def.'s Answer and Countcl., Doc. 16.

Pending before the Court is AEC's Motion to Dismiss TNT's Counterclaim (Doc. 18) and TNT's Motion for Leave to Amend Counterclaim (Doc. 19). Upon review and consideration of the motions, the responses, and the relevant legal authority, and for the reasons stated below, the Court concludes that both motions should be granted.

I.     **Background**

In July 2010, an employee of TNT's subcontractor, Bascon Craddock ("Craddock"), suffered substantial injuries caused by an explosion at a ConocoPhillips Company ("Conoco") oil refinery in Borger, Texas.  Doc. 1 ¶ 20–21.  In February 2011, Craddock sued Conoco.  *Id.* ¶ 23.  Pursuant to a Master Service Agreement between Conoco and AEC, its contractor, AEC agreed to defend and indemnify Conoco against Craddock's claims.  *Id.* ¶ 27.  AEC then tendered the defense and indemnity of Craddock's claims to its subcontractor, TNT, and its insurer based on a Purchase Order Agreement ("the Purchase Order") between AEC and TNT.  *Id.* ¶ 28.  TNT claimed that it was not required to defend or indemnify AEC or Conoco under the terms of the agreement and refused to do so.  *Id.* ¶ 30.  Parties to Craddock's suit eventually settled for $4 million, of which AEC was responsible for $2.75 million.  *Id.* ¶ 33.

The Purchase Order between AEC and TNT included the following indemnity provision:

> [TNT] agrees to defend, indemnify, and hold harmless [AEC]…from and against any claim, demand, cause of action, liability, loss or expense arising from or relating to any actual or asserted…[i]njury to or death of persons…arising directly or indirectly out of this Order or out of any acts or omissions of [TNT] or its suppliers. [TNT's] defense and indemnity obligations hereunder include claims and damages arising from non-delegable duties of [AEC] or [Conoco] or arising from use by [TNT] of…facilities furnished to [TNT] by [AEC] or [Conoco].

Purchase Order, Doc. 1, Ex. A ¶¶ 12–12.3.  In addition, the Purchase Order stated that TNT's "indemnity obligations shall apply except to the extent [AEC] was concurrently negligent, whether actively or passively, including any injury, loss or damage caused by negligence or willful misconduct of, or by defects in design furnished by [AEC]."  *Id.* ¶ 12.6.  The Purchase Order also required TNT to procure and maintain Commercial General Liability Insurance with a minimum combined single limit of liability of $1 million for each occurrence of bodily injury.  *Id.* ¶ 11–11.1.2.  Under the terms of the Purchase Order, the policy was to be endorsed to name

AEC and Conoco as additional insureds by using a particular form, specifically, an "ISO Endorsement CG 20 10 11 85 'Additional Insured — Owners, Lessees or Lessors (Form B)'" ("the CG 20 10 Form"). *Id.*

According to AEC, the CG 20 10 Form "provides broad coverage that insures additional insureds irrespective of the fault of any party or the cause of the injury." Doc. 1 ¶ 14. AEC complains that TNT procured the additional insured coverage using a form other than that specified in the Purchase Order which provided less coverage and resulted in AEC being denied coverage for the loss at issue. *Id.* ¶ 18. On July 10, 2013, AEC filed the instant suit against TNT for breach of contract based on (1) TNT's failure to procure the agreed insurance coverage naming AEC and Conoco as additional insureds; and (2) TNT's refusal to defend or indemnify AEC for Craddock's suit. *Id.* ¶¶ 35–36. AEC claims that the required insurance would have protected it "irrespective of the fault of any party or the cause of the injury." *Id.* ¶ 14. It seeks damages resulting from its settlement with Craddock. *Id.* ¶ 43.

TNT filed a counterclaim seeking a declaratory judgment that "pursuant to the terms of the purchase orders, Terms and Conditions of Rental, and insurance policies, [AEC] is not entitled to and has no right to defense or indemnity." Answer and Countercl., Doc. 16 ¶ 61. In support of its counterclaim, TNT simply cites the provision of the Purchase Order which states that TNT's "indemnity obligations shall apply except to the extent [AEC] was concurrently negligent." *Id.* ¶ 57 (citing Doc. 1, Ex. A ¶ 12.6). TNT offers no further explanation of its argument; nor does it assert any allegations of concurrent negligence against AEC. *See id.* ¶¶ 55–65.

AEC now moves to dismiss TNT's counterclaim for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Doc. 18 at 1. It argues that TNT's counterclaim (1) fails

to allege sufficient facts demonstrating its entitlement to relief; and (2) is duplicative of AEC's breach of contract claim and, therefore, "seeks the resolution of matters that will already be resolved by [AEC's] breach of contract claim." *Id.* at 1. According to AEC, such duplicative suits are regularly rejected in the Fifth Circuit. *Id.* (quoting *Burlington Ins. Co. v. Ranger Specialized Glass, Inc.*, No. 4:12-CV-1759, 2012 WL 6569774, at *2 (S.D. Tex. Dec. 17, 2012)).

TNT filed a response in which it concedes that its counterclaim is the "mirror-image" of AEC's breach of contract claim. Def.'s Resp., Doc. 19 at 1–3. It argues, however, that the Court is not required to dismiss such a counterclaim and that granting such requests for declaratory relief is commonplace within the Fifth Circuit, particularly for indemnity actions, when a declaratory judgment terminates uncertainty and insecurity from the controversy. *Id.* (citing *La. Generating, LLC v. Ill. Union Ins. Co.*, 719 F.3d 328, 332, n.1 (5th Cir. 2013)). TNT argues that the Court should exercise its discretion to grant TNT's request in this case in order to prevent the future uncertainty which would result if AEC were to dismiss its case. *Id.* at 1–2. TNT contends that if AEC were to dismiss its case, TNT would be "left with an open question regarding its potential liability." *Id.* TNT further contends it has pleaded the specific contractual provisions upon which it relies, which is sufficient to support and provide notice of its claim. *Id.* at 3–4.

## II.     AEC's Motion to Dismiss TNT's Counterclaim

### A.     *Legal Standard*

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining plausibility, courts first disregard "formulaic recitation[s] of the elements" of the legal claim as conclusory. *Id.* at 662. Second, courts must assume the truth of

all factual allegations and determine whether those factual allegations allege a plausible claim. *See Id.* "Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Counterclaims are subject to the same pleading requirements as complaints. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) ("Each allegation must be simple, concise, and direct."). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (internal citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). If the facts fail to "nudge [the] claims across the line from conceivable to plausible, [then the] complaint must be dismissed." *Id*.

### B. Discussion

TNT's counterclaim is brought under the Declaratory Judgment Act. 28 U.S.C. § 2201. "The Declaratory Judgment Act is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy." *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). On its face, the Act states that courts "may declare the rights and other legal relations of any interested party seeking such declaration." 18 U.S.C. § 2201(a). However, it does not create a substantive cause of action. *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act…is procedural only, not substantive…."). The Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citing *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). As such, it "gives federal courts the competence to declare rights" without imposing a duty to do so. *See Pub. Affairs Assocs. v.*

*Rickover*, 369 U.S. 111, 112 (1962).

Courts have "broad discretion to grant or decline to grant declaratory judgment." *Wilton*, 515 U.S. at 277; *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). And while a court "may not dismiss a request for declaratory judgment relief on the basis of whim or personal disinclination, the court may consider a variety of factors in determining whether to decide a declaratory judgment suit." *Rowan Cos. v. Griffin*, 876 F.2d 26, 29 (5th Cir. 1989) (internal quotation marks and citation omitted). The two principle factors in favor of rendering declaratory judgments are: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993) (citation omitted). Ultimately, however, if a request for declaratory judgment adds nothing to an existing suit, it may be dismissed. *See Pan-Islamic Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980) (affirming denial of leave to amend to add claims that were adequately raised in the original complaint).

Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit. *See, e.g., Burlington*, No. 4:12-CV-1759, 2012 WL 6569774, at *3 (S.D. Tex. Dec. 17, 2012) (dismissing a declaratory judgment counterclaim that was a "mirror image of the…Complaint"); *Regus Mgmt. Grp., LLC v. Int'l Bus. Mach. Corp.*, No. 3:07-CV-1799-B, 2008 WL 2434245, at *2 (N.D. Tex. June 17, 2008) (dismissing a declaratory judgment claim that was "repetitive and unnecessary"); *Xtria, LLC v. Tracking Sys., Inc.*, No. 3:07–CV–0160, 2007 WL 1791252, at *3 (N.D. Tex. Jun. 21, 2007) (dismissing claim that sought "a declaratory judgment to the same

effect as [the existing] breach of contract claim…."); *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 3:05–CV–0880, 2006 WL 3691003, at *17 (N.D. Tex. Dec. 14, 2006) (dismissing declaratory judgment action because, even if new reasons were identified, the movant "did not adequately brief them"); *Hanson Aggregates, Inc. v. Roberts & Schaefer Co.*, No. 3:05-CV-1883-P, 2006 WL 2285575, at *3 (N.D. Tex. Aug. 9, 2006) (noting that "a motion for declaratory judgment that merely restates a party's defenses is insufficient…."); *Kogul v. Xspediou Mgmt. Co.*, No. 3:04–CV–2518, 2005 WL 1421446, at * 4 (N.D. Tex. June 1, 2005) (dismissing "[s]eparate declaratory judgment actions [that] would be redundant"); *Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005) (dismissing counterclaim for a declaratory judgment because it had no "greater ramifications than the original suit"). *Compare 5436, LLC v. CBS Corp.*, No. H-08-3097, 2009 WL 3378379, at *17 (S.D. Tex. Oct. 16, 2009) (denying motion to dismiss counterclaim for declaratory judgment where the declaratory relief sought "seeks to define the ongoing and future duties of the parties under the governing contract").

Here, TNT's counterclaim is a pure mirror image of AEC's breach of contract claim. It does not introduce any new facts or issues and TNT has not shown that granting its request for declaratory relief will have any effect beyond that which will result from resolving AEC's original breach of contract claim. TNT does not allege that the Purchase Order is still in effect or that the parties have an ongoing business relationship. TNT relies on the same evidence—the insurance policy and Purchase Order—to support both its counterclaim and its defenses against the original complaint. The Court anticipates considering this same evidence in deciding the merits of AEC's breach of contract claim and the resolution of that claim will dispose entirely of the issues implicated in TNT's counterclaim. TNT's argument that resolving its claim may help

prevent future uncertainty in the event that AEC dismisses its case fails as this issue is not yet ripe. "[A] declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). Since the circumstances which would necessitate a ruling on TNT's counterclaim are purely hypothetical, it is unripe. *See United Transp.*, 205 F.3d at 857.

The Declaratory Judgment Act "gives the court a choice, not a command." *Dresser Indus., Inc. v. Ins. Co. of N. Am.*, 358 F. Supp. 327, 330 (N.D. Tex. 1973), *aff'd*, 475 F.2d 1402 (5th Cir. 1973). Whereas here, granting a counterclaim for declaratory judgment will have no effect beyond that which will result from resolving the pending claims, the Court exercises its discretion to decline to entertain the claim. Accordingly, AEC's 12(b)(6) motion is granted and TNT's counterclaim for declaratory judgment is dismissed without prejudice.

### III.     TNT's Motion for Leave to Amend Counterclaim

After a party's time to amend its complaint has passed, it may only amend with consent of the other party or leave of the court. Fed. R. Civ. P. 15(a). It is not unusual for parties to request for leave to amend their claims after a 12(b)(6) dismissal. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In such circumstances, parties are often afforded at least one opportunity to cure pleadings of deficiencies before the case is dismissed, "unless it is clear that the defects are incurable or the [motioning party] advises the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Id.* "[T]he grant or denial of an opportunity to amend is within the discretion of the

District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  There is generally a presumption in favor of granting leave to amend and a motion for leave to amend should not be denied unless there is undue delay, bad faith, or dilatory motive on the part of the movant; repeated failure to cure deficiencies; or undue prejudice to the opposing party.  *U.S. ex rel. Willard v. Humana Health Plan*, 336 F.3d 336, 386 (5th Cir. 2003).  A court does not abuse its discretion by denying leave to amend if the amendment would be futile.  *Landavazo v. Toro Co.*, 301 F. A'ppx. 333, 337 (5th Cir. 2008).  Allowing a plaintiff to amend a complaint is futile if the amendment could not survive a motion to dismiss under Rule 12(b)(6).  *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).

Here, TNT claims that it is willing and able to amend the counterclaim to cure its deficiencies.  Being that there is no evidence of bad faith or dilatory motive, the Court will allow TNT one last opportunity to amend its counterclaim to assert a claim that is not duplicative of the AEC's claim.

**IV.   Conclusion**

For the foregoing reasons, it is hereby

**ORDERED** that AEC's Motion to Dismiss for Failure to State a Claim (Doc. 18) is **GRANTED**.  It is further

**ORDERED** that TNT's Motion for Leave to Amend Counterclaim (Doc. 19) is **GRANTED**.

SIGNED at Houston, Texas, this 14th day of July, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE